UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-60016-Cr-COHN/VALLE

UNITED STATES OF AMERICA

v.

FRENEL CENAT,

        Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

COMES NOW the United States, by and through the undersigned Assistant United States Attorney, and files this Sentencing Memorandum, stating as follows:

**Factual Background and Procedural History**

The defendant, Frenel Cenat ("the defendant"), was a City of Miami Police Department ("MPD") Police Officer. On the evening of November 16, 2023, the defendant was arrested and on November 17, 2023, he made his initial appearance on a Criminal Complaint charging him with violating 18 U.S.C. § 1951 (Hobbs Act extortion under color of official right and attempt); 18 U.S.C. § 641 (theft of U.S. government funds); and 21 U.S.C. § 846 (attempted possession with intent to distribute cocaine). DE 2. These charges arose from his abuse of his police position, authority, and equipment, including his MPD-issued vehicle, weapons, uniform, and body armor, to conduct traffic stops of two vehicles during which he demanded, accepted, and took a total of $132,000 in cash that was represented to be drug proceeds, and seven kilograms of what was represented to be cocaine, in exchange for allowing the drivers of those vehicles to leave

1

the scenes with their vehicles and without being arrested or charged.  *See* DE 1.

Shortly after his arrest the defendant retained counsel and expressed a desire to accept responsibility and resolve this matter by pleading guilty prior to the return of an indictment.  This led to the filing of a two-count Information charging the defendant with: (1) attempted Hobbs Act extortion under color of official right, in violation of 18 U.S.C. § 1951(a); and (2) attempted possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii)(II).  DE 19.

After waiving indictment (*see* DE 22, 25), the defendant pled guilty to the two counts of the Information on March 27, 2024.  DE 30.  As admitted at the change of plea in the Stipulated Factual Basis (DE 32) and as detailed in paragraphs 13 through 32 of the Pre-Sentence Investigation Report (DE 35, the "PSR"), the defendant abused his position as a Police Officer with the MPD, violating the MPD Departmental Orders and breaking the law by demanding and accepting money and what he believed was seven kilograms of cocaine from drivers on two occasions (who actually were undercover FBI personnel posing as drug couriers as part of an undercover proactive investigation of the defendant) who he had been told were drug couriers, in exchange for not arresting them. Because the PSR and Stipulated Factual Basis describe the defendant's criminal conduct in detail, those facts will not be repeated herein.  However, it is significant that the total value (in cash and what was represented to be cocaine) of the benefit the defendant expected to obtain through his illegal activity was approximately $244,000.  PSR at ¶ 32; DE 32 at 8.

**The Plea Agreement**

In the Plea Agreement, the parties agreed to make a number of joint recommendations (acknowledging that they were not binding on the Court or Probation)

2

regarding the advisory Sentencing Guidelines and the ultimate sentence to be imposed. Those agreements are summarized below.

For Count 1, the parties agreed to jointly recommend that: (1) the defendant was a public official with a base offense level of 14 pursuant to USSG § 2C1.1(a)(1); (2) the offense involved more than one bribe with a corresponding 2-level increase in his offense level pursuant to USSG § 2C1.1(b)(1); (3) pursuant to USSG § 2C1.1(b)(2), the defendant should receive an additional 10-level increase due to the value of the benefit received in return for the bribe payments being more than $150,000 and less than $250,000; and (4) the defendant's offense level should receive a 4-level increase because he was a public official in a sensitive position.   DE 31 at ¶ 7.

For Count 2, the parties agreed to jointly recommend that: (1) the amount of controlled substances involved in this offense was at least 5 but less than 15 kilograms of cocaine, and therefore, pursuant to Section 2D1.1(a)(5), the applicable base offense level is 30; (2) a firearm was possessed during the offense, and as a result, pursuant to Section 2D1.1(b)(1), the defendant's offense level should be increased by 2 levels; (3) the defendant abused a position of public trust to significantly facilitate the offense, and as a result, the defendant's offense level should be increased by 2 levels pursuant to Section 3B1.3; and (d) the offense involved the use of body armor, and therefore, the defendant's offense level should be increased by 2 levels pursuant to Section 3B1.5(1) and (2)(A).   In addition, this Office and the defendant also agreed to jointly recommend that Count 1 and Count 2 should be grouped together into a single Group for purposes of sentencing pursuant to Section 3D1.2 of the Sentencing Guidelines.   DE 31 at ¶ 7.

In addition to the joint recommendations of the parties, in the Plea Agreement, the defendant specifically acknowledged and agreed that because a firearm was possessed

3

in connection with the offense to which he pled guilty in Count 2 of the Information, he does not qualify for the application of Sentencing Guidelines Section 5C1.2 ("Limitation on Applicability of Statutory Minimum Mandatory Sentences in Certain Cases") and thus remains subject to the 10-year statutory minimum mandatory term of imprisonment for the crime set out in Count 2.   In addition, the defendant further acknowledged and agreed that because he does not meet all the criteria set forth in Section 5C1.2(a)-(5), he is not eligible to receive the two-level offense level reduction set forth in Section 2D1.1(b)(18). The defendant also understands and agrees that because he possessed a firearm in connection with the offenses to which he is pleading guilty, he is not eligible for application of the two-level downward adjustment found in Section 4C1.1 ("Adjustment for Certain Zero-Point Offenders").   DE 31 at ¶ 8.

### The Advisory Sentencing Guidelines Range Recommended in the PSR

Under the current post-*Booker* sentencing regime, this Court is required to first compute an advisory Guidelines range before it applies the § 3553(a) factors to determine the defendant's ultimate sentence.   *See United States v. Crawford*, 407 F.3d 1174, 1178-79 (11th Cir. 2005).   The PSR computed the total offense level to be Level 33, with the defendant being in Criminal History Category I, leading to an advisory Guidelines sentencing range of 135-168 months (PSR at ¶¶ 52, 55, 86).

### The Government's Sentencing Recommendation

Considering the full scope of the defendant's conduct, background, and history within the context of the advisory Sentencing Guidelines and the § 3553(a) factors, the government respectfully suggests that if the defendant complies with all the requirements necessary to earn the full three-point reduction for acceptance of responsibility and continues to comply with all the requirements of his current bond, then the reasonable

4

and necessary sentence should be a sentence of 135 months imprisonment, at the low end of the 135-168 month advisory Guidelines range recommended by the PSR at ¶ 86. The reasons for this recommendation are set out below.

**The 18 U.S.C. § 3553(a) Factors**

**Section 3553(a)(1) – The Nature of Defendant's Offense**

The first part of § 3553(a)(1) focuses on the nature and circumstances of the offense committed. As set out in the Information, Stipulated Factual Basis, and PSR, on two separate occasions, the defendant abused his police position, authority, and MPD-issued weapons and other equipment to commit sham traffic stops with the goal of taking significant quantities of cash proceeds from drug trafficking and/or kilograms of cocaine from drivers who he was told were couriers for drug trafficking organizations. Unbeknownst to the defendant, these two drivers were FBI undercover employees participating in a proactive investigation of the defendant, who had previously explained to a confidential human source how he would carry out these stops, giving the driver the "choice" of giving up their money and/or cocaine and driving away free or refusing and going to Federal prison.

By these actions, the defendant completely betrayed the trust placed in him by the MPD and the community he was sworn to serve and protect. In addition, while the defendant had asked the CHS if he thought the drivers would resist and was told no, he had no way of actually knowing if there might be resistance, creating a dangerous situation for the driver, the defendant, and any individuals who might otherwise come across the scene while the stop was ongoing. Taken as a whole, it cannot be disputed that the defendant committed extremely serious offenses deserving of equally serious

5

punishment.[1]

### Section 3553(a)(1) – The Defendant's History and Characteristics

The second part of § 3553(a)(1) focuses on the history and characteristics of the defendant. As reflected in the PSR at ¶¶ 53-58, 62-76, the defendant appears to have been a productive law-abiding citizen and dedicated family man throughout his life, including earning a B.A. and an M.P.A. from Barry University and working in law enforcement for almost twenty years. While this history does not excuse his serious crimes, it is a factor to consider in setting the ultimate sentence. Similarly, it should be a factor in the defendant's favor that after his arrest, he promptly expressed his intent to accept responsibility and resolve the matter by pleading guilty.

### Section 3553(a)(2)

Section 3553(a)(2) is aimed at ensuring that the sentence imposed serves the various purposes stated in subparts (A) – (D), including imposing a sentence that reflects the seriousness of the offense and provides just punishment and promotes respect for the law, provides adequate deterrence, protects the public from a risk of recidivism, and provides necessary rehabilitation and care for the defendant.

The undisputed seriousness of the defendant's crimes has already been discussed above. In light of that seriousness, the defendant's crimes should result in a significant period of incarceration to truly provide just punishment and promote the needed respect

---

[1] The record is devoid of any financial hardship or dire need that might explain the defendant's decision to betray his position of trust and authority. In fact, the PSR, at ¶ 75, reflects that at the time of his arrest, the defendant was earning just over $100,000 annually. As such, the criminal conduct admitted by the defendant at his change of plea cannot be excused or minimized as a mere episode of aberrant behavior driven by some extraordinary need or difficult circumstances.

6

for the law. Moreover, while the risk of recidivism appears low for this defendant, who as part of his plea agreed to (1) resign from his position with the MPD; (2) surrender and not seek reinstatement of his Florida Department of Law Enforcement Certification; and (3) not seek employment as a law enforcement officer or corrections officer in the future (DE 31 at ¶ 6), the significant sentence being recommended by the government still is necessary to provide adequate deterrence to criminal conduct by others similarly situated.

Numerous cases have been prosecuted in this district and others involving law enforcement officers who have been charged with and convicted of abusing their positions to unlawfully enrich themselves by engaging in, and protecting others who are engaging in, criminal activity including extortion, drug trafficking, theft, and robbery.[2] Because it is likely that potential offenders holding law enforcement positions still may consider the chance of ever being caught to be very low given the challenging nature of trying to investigate and prosecute cases involving corrupt law enforcement officers willing to sell out their badge for criminal gain, it is not only appropriate but also necessary under the mandate of § 3553(a)(2)(B) to use the sentence in this case to try to deter other potential offenders from engaging in this type of criminal behavior.

Here, the government respectfully suggests that its recommended sentence strikes a fair balance that sends a strong message of deterrence to others tempted by the

---

[2] One such case was *United States v. Companion,* Case No. 07-60097-Cr-COHN. The defendant, Kevin Companion, was a Hollywood Police Department ("HPD") detective who was the ringleader of a group of four corrupt HPD officers who engaged in numerous criminal activities to assist individuals they believed were organized crime figures but who actually were undercover FBI employees. These activities included transporting stolen property for the group, providing security for a tractor-trailed theft, and providing an escort for a vehicle carrying a load of heroin. Companion pled guilty to an Information and was sentenced by this Court to 168 months in prison.

lure of easy money, but that also credits the defendant for his law abiding past and very early acceptance of responsibility.

### Sections 3553(a)(3), (a)(4), (a)(5)

These subsections of § 3553(a) require consideration of the types of sentences available, the advisory Guidelines sentencing range, and any relevant policy statements in determining the final sentence. The available sentences for the defendant run from a mandatory minimum of ten years in prison all the way up to life imprisonment, with the advisory Guidelines range being 135-168 months. In this case, where the defendant quickly expressed his desire to plead guilty after he was arrested and retained counsel, but where the crimes committed and abuse of trust were very serious, the government, after considering the Guidelines and applicable commentary, suggests that a sentence at the low end of the Guidelines range -- 135 months -- is the necessary and appropriate sentence in this case.

### Section 3553(a)(6)

This subsection of § 3553(a) focuses on avoiding unwarranted sentencing disparity. There is no disparity concern here where the advisory Guidelines and the facts and circumstances of this particular case standing on their own justify the low-end of the Guidelines range sentence sought by the government. However, support for the government's request is found by looking at other sentences in this district for police officers who engaged in corrupt criminal activity and pled guilty. *See e.g. United States v. Schonton Harris*, Case No. 18-20939-Cr-ALTONAGA (186-month prison sentence after guilty plea for MPD officer who was involved in protecting and delivering multiple

8

shipments, totaling in excess of 70 kilograms, of what she thought was cocaine, and who recruited other MPD officers to assist her in those illegal activities); *United States v. Kevin Companion*, Case No. 07-60097-Cr-COHN (168-month low-end sentence imposed by this Court on a corrupt former Hollywood Police Department detective, referenced in footnote 2, above).   Sentences such as those referred to above support the 135-month sentence sought in this case, where the defendant did not recruit other officers and where the amount of cocaine was less than that involved in the *Harris* case.

**Section 3553(a)(7)**

This subsection addresses the need to provide restitution.   In this case, there is no restitution but the defendant did agree in the Plea Agreement to the entry of a $13,000 forfeiture money judgment.   DE 31 at ¶ 12.   This $13,000 represents the amount of official government funds used in the two incidents that was not recovered upon the arrest of the defendant and the simultaneous search, pursuant to a Federal search warrant, of his residence.   PSR at ¶¶ 23, 30, 31.   The government will be seeking a preliminary order of forfeiture prior to sentencing, and at sentencing, the government will be asking that the Court include that order of forfeiture as part of the sentence imposed.

**WHEREFORE**, the government respectfully requests that this Court impose a sentence of imprisonment of 135 months, followed by a five-year term of supervised release, a final order of forfeiture of $13,000, and a $200 special assessment as mandated by law. With the permission of the Court, the government will elaborate further on these recommendation at the upcoming sentencing hearing.

                Respectfully submitted,

                MARKENZY LAPOINTE
                UNITED STATES ATTORNEY

By:    s/*Edward N. Stamm*
        Edward N. Stamm (FL Bar #373826)
        Assistant United States Attorney
        U.S. Attorney's Office - SDFL
        99 Northeast Fourth Street, 8th Floor
        Miami, Florida 33132-2111
        Telephone: (305) 961-9164
        E-mail: edward.stamm@usdoj.gov