UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 24-60016-CR-COHN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FRENEL CENAT,

    Defendant.
_____/

## PRELIMINARY ORDER OF FORFEITURE

**THIS MATTER** is before the Court upon the United States' Unopposed Motion for Preliminary Order of Forfeiture ("Motion") against Defendant Frenel Cenat ( "Defendant") [DE 40]. The Court has considered the Motion, is otherwise advised in the premises, and finds as follows:

On January 26, 2024, the United States filed an Information charging the Defendant in Count 1 with Hobbes Act Extortion - Attempt in violation of 18 U.S.C. § 1951 and in Count 2 with Attempt to Possess with Intent to Distribute Cocaine violation of 21 U.S.C. § 846. See DE 19. The Information also contained forfeiture allegations, which alleged that upon conviction of a violation of 18 U.S.C. § 1951, the Defendant shall forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to such offense pursuant to 18 U.S.C. § 981(a)(1)(C). Id. at 4. In addition, the forfeiture allegations alleged that upon conviction of a violation of 21 U.S.C. § 846, the Defendant shall forfeit any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the results of such violation, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violation pursuant

to 21 U.S.C. § 853. Id.

On March 27, 2024, the Court accepted the Defendant's guilty plea to both Counts in the Information. DE 30. As part of the guilty plea, the Defendant agreed to a forfeiture money judgment in the amount of $13,000. DE 31 at ¶ 12.

In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. DE 32. The Factual Proffer also provided a basis for the forfeiture of property. See id.

The Defendant was employed by the City of Miami Police Department (MPD) as a Police Officer since approximately September 2008. See DE 32. At the time of the events in issue, the Defendant had been issued and was using an MPD unmarked police vehicle, specifically, a 2016 Black Ford Explorer, as a "take home" vehicle. Id.

As a police officer with the MPD, the Defendant was bound to follow the MPD Departmental Orders. Id. The Departmental Orders prohibited the unauthorized use or attempted use of an officer's official position for personal or financial gain, and they also prohibited the acceptance of bribes, money, or other valuables, while acting in the capacity of a police officer, either on or off duty. Id. The MPD Departmental Orders also prohibited officers from engaging in any act of extortion or unlawful means of obtaining money, a reward, or anything of value through the use of their official position. Id. at 1-2.

In September of 2023, a confidential human source (CHS) informed law enforcement that they had been told by a mutual friend (the "Associate") that Defendant had previously conducted traffic stops of individuals known to have just engaged in drug transactions, for the purpose of stealing the drugs and/or money those individuals were transporting. Id. at 2. On October 16, 2023, the Associate introduced the Defendant to

the CHS at a meeting in Broward County, Florida during which the three of them discussed an opportunity for the Defendant to use his position as a police officer to stop an individual immediately following a drug transaction and steal approximately $50,000 in drug proceeds that the individual would have in their vehicle. Id.

During this meeting, the Defendant showed the CHS his MPD unmarked police vehicle, activating the lights and sounding the siren. Id. The Defendant described his preference on conducting the traffic stops right after the drug transactions and after having been given information about the participating individuals to use to ensure compliance with his demands. Id. The Defendant also indicated that he specifically conducted the traffic stops outside of his jurisdiction and while off duty. Id.

On November 1, 2023, the Associate started a group chat with the CHS and the Defendant to begin planning for a traffic stop rip off for Friday, November 3, 2023. Id. at 3. They discussed the fact that the driver to be stopped would have approximately $50,000 in cash from the purported drug transaction. Id.

On November 2, 2023, the Defendant and the CHS spoke via Signal. Id. During this call, which only included the Defendant and the CHS, the Defendant requested information about the individual he would be stopping. Id. The Defendant went on to explain that he would give the driver the choice of giving him the bag, believed to contain the money from the drug transaction, or spending life in federal prison. Id.

On November 3, 2023, the CHS messaged Defendant a description of the individual's vehicle for the traffic stop. Id. at 4. UCE 1 and another FBI undercover employee then engaged in a staged drug transaction in the parking lot. Id. The Defendant followed UCE 1 out of the parking lot and immediately turned on the lights and sirens of

his MPD unmarked vehicle to conduct a traffic stop of UCE 1.  Id.

During this traffic stop, which took place outside the City of Miami, in Miami Gardens, the Defendant was dressed in black tactical gear, and he had his MPD issued firearm and taser visible in his holsters.  Id.  He introduced himself as "Officer Martez" with "Miami PD – Dade County Narcotics Unit."  Id.  The Defendant told UCE 1 he witnessed the drug transaction that had just occurred involving UCE 1 and used the information he received from the CHS to try to make UCE 1 believe that he had been under investigation.  Id.  The Defendant told UCE 1 to give him the backpack, which was just provided to UCE 1 during the controlled drug transaction and contained $52,000 in official United States government funds belonging to the FBI.  Id.  The Defendant took the backpack and gave UCE 1 the choice of giving up the backpack or going to jail, and as planned, UCE 1 told him to take the backpack.  Id. at 4-5.  The Defendant then left the scene with the backpack full of money.  Id. at 5.

Later, on November 12, 2023, following up on the Defendant's request, the CHS called the Defendant via Signal about an upcoming deal that was going to take place in Deerfield Beach, Florida on November 16, 2023.  Id. at 5.  The CHS explained that the person the Defendant would be stopping would have approximately five to seven kilograms of cocaine and at least $30,000 in cash from a purported drug transaction.  Id.  Once again, the Defendant told the CHS to give him the details on the individual he would be stopping, and while discussing the split of the money and drugs to be stolen.  Id. at 5-6.

In the days leading up to November 16, 2023, the Defendant indicated he would give the cocaine to the CHS and the CHS's friend to sell, and he and the CHS also

discussed the split and the amount each "brick" would sell for on the street, being approximately $16,000, with the Defendant estimating that it could be sold for a total of $112,000 or $115,000. Id. at 6.

On November 16, 2023, the CHS messaged the Defendant via Signal and provided the driver's name, the city he came from, and the names of his supposed girlfriend and son. Id. at 6-7. This was the vehicle to be driven by an FBI undercover employee referred to herein as "UCE 2." Id. at 7. Thereafter, UCE 2 and another FBI undercover employee engaged in the staged drug transaction at the back of UCE 2's truck in the Fairfield Inn parking lot. Id.

After the transaction, the Defendant followed UCE 2 out of the parking lot and turned on the lights of his MPD vehicle to conduct a traffic stop of UCE 2. Id. The Defendant was dressed in black tactical gear, including his MPD-issued tactical vest with body armor in place, and he had his MPD-issued firearm and taser visible in their holsters. Id. The Defendant introduced himself as "Officer Martez" with "Broward County Sheriff's Office – Narcotics Unit" and told UCE 2 he witnessed the drug transaction that had just occurred. Id. The Defendant told UCE 2 to keep his hands on the steering wheel, and then went to the bed of UCE 2's truck, opened a cooler, took out a duffle bag containing seven kilograms of sham cocaine and $80,000 in official United States government funds belonging to the FBI, and placed it into his MPD vehicle. Id.

Having obtained the sham cocaine and cash from UCE 2, the Defendant allowed UCE 2 to simply drive away. Id. at 8. The Defendant left the scene with the duffle bag containing the sham kilograms of cocaine and the $80,000 in cash. Id. The Defendant called the CHS via Signal and indicated the deal was done and the CHS told the

Defendant to meet him in the parking lot of a Walmart located in Coral Springs, Florida. Id. Shortly thereafter, the Defendant arrived in the Walmart parking lot, and he was arrested. Id. The duffle bag, the seven kilograms of sham cocaine, and the $80,000 in cash from the traffic stop were found in the Defendant's unmarked MPD vehicle. Id. An additional $2,000 in $100 bills from the November 3, 2023, traffic stop of UCE 1 were also found in his vehicle. Id.

During the two traffic stops, the Defendant obtained approximately $132,000 in cash. Id. at 8.

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion is **GRANTED**, and it is hereby **ORDERED** as follows:

1. Pursuant to U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 853, and Rule 32.2 of the Federal Rules of Criminal Procedure, a forfeiture money judgment in the amount of $13,000 is hereby entered against the Defendant.

2. The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

3. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

4. The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 11th day of June, 2024.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF